880 F.2d 1509
 Bankr. L. Rep. P 72,965
In re CHATEAUGAY CORPORATION, Reomar, Inc., The LTV
Corporation, et al., Debtors.
In re BANCTEXAS DALLAS, N.A., Elliott Associates, and Speer,
Leeds & Kellogg, Plaintiffs-Appellants,
v.
CHATEAUGAY CORPORATION, Reomar, Inc., The LTV Corporation,
and RepSteel Overseas Finance, N.V., Defendants-Appellees.
 No. 1208, Docket 89-5008.
 United States Court of Appeals,
Second Circuit.
 Argued June 6, 1989.
Decided June 30, 1989.
 
 Robin E. Phelan, Dallas, Tex. (Haynes and Boone, Kathryn C. Mallory, Mark X. Mullin, of counsel), for plaintiff-appellant BancTexas Dallas, N.A.
 Laurence J. Kaiser, New York City (Kronish, Lieb, Weiner & Hellman, of counsel), for plaintiffs-appellants Elliott Associates and Speer, Leeds & Kellogg.
 Marc Abrams, New York City (Levin & Weintraub & Crames, Michael J. Crames, Steven E. Fox, Davis Polk & Wardwell, New York City, Karen E. Wagner, of counsel), for defendants-appellees.
 Before FEINBERG and KEARSE, Circuit Judges, and METZNER, District Judge.*
 FEINBERG, Circuit Judge:
 
 
 1
 BancTexas Dallas, N.A. (BancTexas), Elliott Associates (Elliott) and Speer, Leeds & Kellogg (Speer) appeal from an order, dated January 25, 1989, of the United States District Court for the Southern District of New York, Charles E. Stewart, Jr., J., dismissing their appeal, and denying leave to appeal, from an order, dated October 20, 1988, of the United States Bankruptcy Court for the Southern District of New York, Burton R. Lifland, Ch. J. In the October 1988 order, the bankruptcy court had denied BancTexas's motion for relief from the automatic stay provision of the Bankruptcy Code, 11 U.S.C. Sec. 362(a). Appellants contend that such denial should be immediately appealable.
 
 Background
 
 2
 RepSteel Overseas Finance, N.V. (RepSteel), the debtor in this case and a wholly-owned subsidiary of the LTV Corporation (LTV), filed a voluntary petition under chapter 11 of the Bankruptcy Code in July 1986, along with LTV and LTV's other subsidiaries and affiliates. At that time, the automatic stay under Sec. 362(a) went into effect. The previous July, RepSteel had issued convertible secured notes having a face value of $65,138,000 (the Notes), for which it pledged as collateral a promissory note in excess of $117 million made by LTV to RepSteel (the LTV Note). BancTexas is the indenture trustee for the Notes and Elliott and Speer are holders of the Notes.
 
 
 3
 In June 1988, BancTexas moved, under Sec. 362(d) of the Bankruptcy Code, 11 U.S.C. Sec. 362(d), for relief from the automatic stay so that it could foreclose on the LTV Note. BancTexas claimed that RepSteel lacked equity in the LTV Note, the LTV Note was not necessary for RepSteel's reorganization, the LTV Note was of insufficient value to adequately protect the holders of the Notes, and fluctuations in the value of the LTV Note provided cause for lifting the stay. Thereafter, Bankruptcy Judge Lifland held an evidentiary hearing on the motion. After characterizing the testimony offered by BancTexas concerning the value of the LTV Note as "inept," he denied the motion because BancTexas had not satisfied the requirements for lifting the stay under Sec. 362. However, in order to avoid "disrupting ... the natural relationships between all of the parties," the judge chose a "practical solution" that he believed to be fair and equitable. That "solution" was to revisit the matter in one year, and in the meantime to require LTV to set aside a fund of $20 million, equal to approximately one-half of the amount that BancTexas's expert estimated the value of the collateral to be on the date of the hearing, appropriately discounted. BancTexas, Elliott and Speer then filed notices of appeal, and, alternatively, motions for leave to appeal to the district court.
 
 
 4
 In a memorandum decision dated January 25, 1989, Judge Stewart found that the order of the bankruptcy court was interlocutory because of the interim relief provided by the bankruptcy judge, and therefore, the order was not appealable as of right. The district judge was apparently also not persuaded to grant appellants leave to appeal an interlocutory order under 28 U.S.C. Sec. 158(a). He therefore declined to exercise the discretion granted him by that section, and dismissed the appeal.
 
 
 5
 BancTexas, Elliott and Speer then appealed to this court. Appellees moved to dismiss the appeal for lack of appellate jurisdiction, arguing that the district court's decision was not final within the meaning of 28 U.S.C. Sec. 158(d). A panel of this court denied the motion without prejudice to its renewal before the panel hearing the appeal, holding that this court clearly has jurisdiction to review the district court's ruling that the bankruptcy court's decision was interlocutory and thus not appealable as of right, but noting that if we concluded that the bankruptcy court's order was nonfinal, we would lack jurisdiction to review both the merits of the bankruptcy court's order and the district court's decision to deny leave to appeal. The panel noted that "otherwise we would not be able to determine the issue on which our own jurisdiction depends." BancTexas Dallas, N.A. v. Chateaugay Corp., 876 F.2d 8, 9 (2d Cir.1989) (per curiam). After receiving full briefs and hearing argument on the question of whether the bankruptcy court's order is interlocutory, we reverse the decision of the district court and remand for a determination of the merits.
 
 Discussion
 
 6
 Under 28 U.S.C. Sec. 158(a), district courts have jurisdiction to hear appeals from final orders of the bankruptcy courts. Because bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings, the concept of finality that has developed in bankruptcy matters is more flexible than in ordinary civil litigation. See In re Johns-Manville Corp., 824 F.2d 176, 179-80 (2d Cir.1987). Some appeals are therefore allowed before the entire bankruptcy is resolved. Of course, not every order of a bankruptcy court is appealable as a final order--only those orders that "finally dispose of discrete disputes within the larger case" satisfy the test. In re Saco Local Development Corp., 711 F.2d 441, 444 (1st Cir.1983) (emphasis in original); see also In re Stable Mews Associates, 778 F.2d 121, 122 (2d Cir.1985).
 
 
 7
 The automatic stay provisions of section 362 of the Bankruptcy Code provide the unique context in this case for application of these finality principles. Courts have uniformly held an order lifting the automatic stay to be final and appealable, see Tringali v. Hathaway Machinery Co., 796 F.2d 553, 557-58 (1st Cir.1986); 1 Collier on Bankruptcy p 3.03(6)(e) (15th ed. 1988) (hereafter "Collier"). Moreover, although "courts have had a more difficult time" deciding whether orders denying relief from the stay are final, see 1 Collier at p 3.03(6)(e), most circuits that have considered the issue have held that such orders are final. See In re American Mariner Industries, Inc., 734 F.2d 426, 429 (9th Cir.1984); In re Leimer, 724 F.2d 744, 745 (8th Cir.1984); Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir.1982). This court has held denial of relief from the automatic stay to be a final, appealable order because such denial is the functional equivalent of a permanent injunction:
 
 
 8
 Bankruptcy Judge Parente's denial of relief from the automatic stay was the equivalent of a permanent injunction.... It was a final order disposing of Di Pierro's petition for relief from the automatic stay, and was therefore appealable as of right to the district court.... An order granting a permanent injunction is a final order. See Vicksburg v. Henson, 231 U.S. 259, 266-67, 34 S.Ct. 95, 97-98, 58 L. Ed. 209 (1913). Congress manifestly intended to treat final denial of relief from the automatic stay as a final order.
 
 
 9
 In re Taddeo, 685 F.2d 24, 26 n. 4 (2d Cir.1982) (emphasis in original).
 
 
 10
 The Taddeo panel's characterization of denial of relief from the stay as a permanent injunction came straight from the legislative history of Sec. 362(e) of the Bankruptcy Code, 11 U.S.C. Sec. 362(e), the section that provides the procedure for motions requesting relief from the stay. In passing the Bankruptcy Reform Act of 1978, P.L. 95-598, 92 Stat. 2549 (1978), Congress was explicit as to its intent. The House and Senate reports both likened an automatic stay and a subsequent motion under the new Sec. 362(e) to the stages of an injunction in an ordinary civil case. Thus, the filing of a petition in bankruptcy is equivalent to a temporary restraining order, the preliminary hearing on a motion for relief from the stay is similar to a hearing on a preliminary injunction, and the decision as a result of the final hearing on the motion for relief is equivalent to a permanent injunction. The reports noted: "the stay is essentially an injunction.... The main difference lies in which party must bring the issue before the court. While in the injunction setting, the party seeking the injunction must prosecute the action, in proceedings for relief from the automatic stay, the enjoined party must move." S.Rep. No. 95-989, 95th Cong., 2d Sess. 53 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5839; H.R.Rep. No. 595, 95th Cong., 1st Sess. 344 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6300.
 
 
 11
 We believe that the language as well as the legislative history of Sec. 362(e) of the Bankruptcy Code supports the view that the denial of relief from the automatic stay here is a final, appealable order. The section itself requires that a bankruptcy judge dispose of a motion for relief from the stay quickly and conclusively. The section provides:
 
 
 12
 Thirty days after a request ... for relief from the stay ..., such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section.... If the hearing under this subsection is a preliminary hearing, ... [a] final hearing shall be commenced not later than thirty days after the conclusion of such preliminary hearing.
 
 
 13
 Although the statute does not require that the final hearing be concluded within any particular time after it commences, Bankruptcy Rule 4001(a)(2) adds:
 
 
 14
 The stay of any act against property of the estate under Sec. 362(a) of the Code expires 30 days after a final hearing is commenced ... unless before that time expires the court denies the motion for relief from the stay or, after notice and a hearing, orders the stay continued pending conclusion of the final hearing.
 
 
 15
 We believe that the hearing before Bankruptcy Judge Lifland was a "final hearing" under the statute. With two exceptions discussed below, there was nothing to indicate the contrary. There was only one hearing on the motion, at which witnesses testified, and at its conclusion the bankruptcy judge continued the stay in effect. The parties obviously regarded the proceeding before the bankruptcy judge as the section 362 hearing. The judge did not refer to the hearing as a "preliminary" hearing, and the failure of all concerned, including the judge, even to mention the statutory requirement that a "final hearing ... be commenced not later than thirty days after the conclusion of such preliminary hearing" confirms this view. The order that was entered as a result of the final hearing, as dictated by the legislative history referred to above, is the equivalent of a permanent injunction. As Taddeo indicates, we believe that it is consistent with congressional intent to treat such denials as final, appealable orders.
 
 
 16
 The question that remains is whether the bankruptcy court's special provisions at the hearing make the order non-final. These provisions were that the bankruptcy judge agreed to revisit the matter in one year, and required LTV to set aside $20 million "in recognition of [the] proceeding" then concluding before the bankruptcy court. The district court distinguished the controlling precedent of Taddeo from this case on the ground that Judge Lifland's order was an "interim compromise," rather than "equivalent to a permanent injunction." It found that the bankruptcy court's order was not a final denial of relief because it left the door open to further modification.
 
 
 17
 Although we agree that the bankruptcy court's order was open to modification in one year, we do not believe that this factor transforms an otherwise final order into a non-final order. Because the statute requires that the final hearing commence within 30 days after "the conclusion" of the preliminary hearing, Judge Lifland's reconsideration of the issue in one year cannot properly be the final hearing contemplated by the statute, and cannot make the October 20, 1988 hearing a preliminary hearing for purposes of the statute. It is true that in a non-injunctive bankruptcy context, a judge's statement of intent to reconsider an issue in the relatively near future might be significant in determining whether the order is final or interlocutory. See In re Chateaugay Corp., 80 B.R. 279, 283 (S.D.N.Y.1987). In view of the applicable statute and rule in this case, however, allowing a year's postponement of further consideration on a motion for relief from the stay to render the order non-appealable would violate congressional intent. The House report states that Sec. 362(e) "provides a protection for secured creditors that is not available under present law. The subsection sets a time certain within which the bankruptcy court must rule on the adequacy of protection provided of the secured creditor's interest." H.R.Rep. No. 595, supra, at 344; see also S.Rep. No. 95-989, supra, at 53 (same idea), 1978 U.S.Code Cong. & Admin.News 5839, 6300. Thus, the leading text points out that Congress only allowed ninety days to pass between a request for relief from the stay and "final judicial determination." 2 Collier at p 362.08(2). Nor does the requirement that LTV set aside $20 million change this conclusion. Apart from the ambiguity of this aspect of the bankruptcy court's order, we do not see why the existence of such a fund should insulate the order from immediate review, if for no other reason than to test the adequacy of the fund.
 
 
 18
 In addition, whenever a motion for relief from the automatic stay is denied--whether or not the bankruptcy court expressly instructs the parties that the door remains open--the movant remains free to make a new motion, based upon changed circumstances, for relief from the stay at a future date. Indeed, that would be true in most instances of even a concededly final injunction. See, e.g., Association Against Discrimination in Employment, Inc. v. City of Bridgeport, 710 F.2d 69, 74 (2d Cir.1983). Because the automatic stay will necessarily be lifted at some time, the sole issue in a motion for relief from the automatic stay is temporal. If the stay is lifted only at the time of confirmation of the plan, an appeal from a denial of relief such as this becomes moot. The possibility of mootness further supports appellants' argument that the denial should be immediately appealable. Reconsideration of the issue in one year is actually consideration of a new motion, which will be decided in light of different circumstances, and the consequences for the parties may be completely different at that time than they would have been had relief been granted at the time the original motion was made. We believe that the bankruptcy court's order disposed of a discrete dispute in the case--and therefore satisfies the test of finality--because it denied appellants the right to foreclose on their collateral under the circumstances in effect on the date that they requested that relief and no further hearing would be held for a year.
 
 
 19
 We note that nothing in this opinion should be construed as criticism of the merits of the bankruptcy judge's decision to decline to lift the stay and to provide for "interim relief" until reconsideration a year later. However, while practical solutions are often necessary, particularly in cases such as this--which the bankruptcy judge called "probably the most unique and complex case to date"--they should be reviewed on their merits, and should not affect the appealability of an otherwise final order. Therefore, we remand to the district court for a determination of whether the bankruptcy court erred in denying BancTexas's motion for relief from the automatic stay.[1]
 
 
 20
 Reversed and remanded.
 
 
 
 *
 Honorable Charles M. Metzner, Senior United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Because the district court held that the order was not appealable, it did not decide whether Elliott and Speer have standing to appeal the bankruptcy court's order. The motion before the bankruptcy court was made by BancTexas only, as indenture trustee, on behalf of the noteholders pursuant to the indenture. Because we hold that the order is appealable, the district court will have to determine on remand whether Elliott and Speer are proper appellants